Thomas Robert SIMPSON, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. CV 76–0273–ALS.

United States District Court, C.D. California.

Oct. 27, 1982.

Steven Roseman, Los Angeles, Cal., for plaintiff.

Stephen S. Trott, U.S. Atty., Fredrick M. Brosio, Jr., Peter R. Osinoff, Asst. U.S. Attys., Los Angeles, Cal., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

STEPHENS, District Judge.

### FINDINGS OF FACT

1. This action was brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, for injuries sustained on December 20, 1973, by Plaintiff when he fell into scalding water at the Hot Creek Recreation Area, which is a site of natural hot springs in the Mammoth Ranger District of the Inyo National Forest.

2. On the afternoon of December 20, 1973, Plaintiff and two companions, Thomas Short and Cheryl Grey, visited the Hot Creek Recreation Area which contains a stream that flows through a gorge and is warmed in places by thermal springs.

3. At the south rim of the Hot Creek Recreation Area was a paved parking lot. At the entrance to the parking lot was a Forest Service sign which identified the site. A building at the side of the parking lot nearest the rim of the gorge contained separate facilities for men and women, which consisted of toilets, wash basins, and a place to change clothes.

4. The Forest Service maintained a paved trail from the building to a bridge which crossed the stream more than 100 feet below the rim.

5. Several years before the accident, picnic tables and barbeque facilities had been present. Because use of those facilities threatened the ecology of the area, they were removed. Only garbage facilities remain.

6. Overnight camping in the Hot Creek Recreation Area was forbidden. There were many campsites in the Inyo National Forest where camping fees were charged by the Forest Service. The nearest campsite to Hot Creek was about five miles away.

7. The existence of warm water at the Hot Creek Recreation Area has been known for at least 50 years. During that time, public use of the natural amenities of Hot Creek has increased.

8. Hot Creek has long been a popular bathing place. The temperature of the water in Hot Creek varies in accordance with the currents which disburse the hot water from springs in the stream bed. The principal bathing area is located just downstream from the bridge, and there are other bathing areas several hundred feet upstream (west) and downstream (east) from the bridge.

9. On August 25, 1973, five hot springs appeared for the first time on the south side of the gorge downstream from the bridge. Hot water flowed from these springs into the stream. When mixed with the cold water of the stream, the resulting water temperature provided another comfortable bathing site. However, the new springs presented a serious danger to visitors. Two of them formed pools which were hot and deep enough to scald individuals, if they fell in.

10. To protect visiting members of the public, the Forest Service put up a snow fence which surrounded all five of the new springs. Warning signs were posted at 15 to 20 foot intervals along the fence. The signs, which were made of paper, were maintained periodically by the Forest Service.

11. When the stream volume was high, the fence reached the water's edge. When the stream volume was low, it was possible to walk around the upstream end of the fence into the fenced area. At the time of

the accident, the fence ended at least five feet from the water's edge. While there was a gap between the stream and the fence at the time of the accident, the fence line and purpose of the fence were obvious to anyone who approached the gap between the stream and the fence from upstream of the fence.

12. At the time of the accident, there was a fence along the rim at the top of the path, with signs indicating the paved path down to the stream. The fence and signs were erected to prevent the public from descending in a manner that would erode the steep side of the gorge.

13. About one-third of the way down the Forest Service path it joined a service road which led down to a bridge. At the intersection, there was a sign which warned of pot holes and scalding water. The sign could not be missed by anyone who took the path down to the stream.

14. Plaintiff testified that he was an experienced hiker in the High Sierra and that he generally took note of signs along the trails and stayed on the indicated trails.

15. The testimony of Plaintiff and his two companions shows that within two hours before arriving at Hot Creek Recreation Area, he had at least two and possibly more 16-ounce cans of beer. There was no testimony concerning how this affected Plaintiff.

16. On the day of the accident, Plaintiff departed from his customary caution by leaving the Forest Service trail following the lead of his two companions and descended the steep side of the gorge along the upstream side of the snow fence to Hot Creek.

17. The sides of the gorge, according to Plaintiff, were covered with snow, except for the bank immediately beside the stream. The paved Forest Service path was not snow covered.

18. As Plaintiff descended the bank, he saw the warning signs on the snow fence which stated "NEW POT HOLES—SCALDING WATER—BANKS CAVING IN—STAY AWAY." Plaintiff testified that when he reached the stream he took heed of the warning signs on the fence by proceeding in an upstream direction away from the bubbling pools of water behind the fence. He testified that there were other well-trodden paths down the steep hillside and along the bank of the stream and that other hikers had evidently walked on the prohibited side of the snow fence.

19. Testimony by Plaintiff and his two companions concerning the place where the accident occurred contained many uncertainties and some direct conflict. Plaintiff placed the site of the accident about 18 feet upstream from the fence. No place along the stream upstream from the fence containing sufficient scalding water for the accident to have happened was identified by any other witness. No peninsula upstream from the fence was identified by any witness. An examination of Defendant's Exhibit A, the topographic map, shows no peninsula upstream from the fence. Both Mr. Short and Miss Grey consistently placed the site of the accident in the immediate vicinity of the fence, even to the extent that Plaintiff was on one side of the fence line and his companions were on the other.

20. When Plaintiff and his companions reached the stream, they wandered around in an area estimated by Mr. Short to have a 30 foot radius. This took them both inside and outside of the fenced area. Mr. Short made a drawing of the site of the accident at his deposition to which it is attached. The configuration of shoreline shown by Mr. Short almost exactly matches the shoreline shown on the topographic map which is Defendant's Exhibit A, at the point where a water flow into the stream is shown from the point designated "E" on the topographic map. This point of inflow into the stream is close to the point shown on Mr. Short's drawing as the "point of removal." According to Mr. Short, the place where the accident happened was right in front of them as they came down to the water and on a little peninsula. He tested the ground for firmness because he did not want to fall in and then all three of them walked out on to the peninsula. Mr. Short and Miss Grey

left the peninsula and Plaintiff was following when the ground gave way beneath him. He apparently broke into a natural caldron where scalding hot water had accumulated undiluted by the stream flow of cooler water. Apparently describing what he saw when or after pulling Plaintiff out, Mr. Short testified in his deposition at Page 24, Lines 5 through 8, as follows: "The water itself in the creek had a lot of swells in it, you know. You could see that it was a fresh spot coming out of the ground, under the creek it looked like."

21. Neither of Plaintiff's companions saw him fall into the scalding water, although Mr. Short pulled him out several seconds later. Plaintiff testified that the ground along the stream suddenly gave way and plunged him into scalding water, severely scalding him up to his waist.

22. While several small steam vents and springs of hot water were identified along the bank of the stream, none were large enough or deep enough to be the site of the accident.

23. Although prior accidents had occurred in the area, the most similar prior accident at the Hot Creek Recreation Area occurred in 1971, when a small part of the paved path collapsed and burned a child's foot.

24. Reliable expert witnesses testified for both sides. Plaintiff's expert, John C. Adams, a geologist who had worked for the California Division of Highways, testified that the Long Valley area, in which Hot Creek is located, is an area of great geological instability. He testified that, without constant supervision, it is virtually impossible to prevent adventurous individuals from entering the dangerous and fenced-in areas at the Hot Creek Recreation Area.

25. Defendant's expert, Roy Bailey, is the Coordinator of the Volcano Hazards Program for the United States Geological Survey (USGS). Between 1972 and 1980, he headed a United States Geological Survey Team, which did extensive geologic mapping and geothermal resource investigations in the Long Valley, including the Hot Creek Recreation Area. Mr. Bailey was present at Hot Creek during and after the time when the five new springs erupted on the bank in late August, 1973. He was not present at Hot Creek during the winter when the accident happened in December, but he returned in the spring of 1974. He testified that, except for two large hot pools which were behind the snow fence, there was no other location in the Hot Creek Recreation Area which contained a sufficiently large amount of scalding water to cause the injuries sustained by Plaintiff.

26. The cold water of the stream quickly tempers the hot water flowing from the bank into the stream and from hot water vents in the stream bed.

27. The eruption of hot springs in August, 1973, was not a foreseeable event. The banks immediately along the stream and upstream from the fence are more stable than the steeper banks of the gorge above it. The collapse of such banks was not reasonably foreseeable.

28. The accident described by Plaintiff did not occur at any place along the bank of Hot Creek upstream from the snow fence. The stream itself did not contain hot water in sufficient concentration to cause the severe burns which Plaintiff sustained. The accident occurred within the fenced area which contained the hot springs and steam vents that developed in August, 1973. This was the area of most recently developed and currently developing hazardous geothermal activity.

29. For many years, the Forest Service has disseminated information to the public concerning the nature of the Hot Creek Recreation Area. In addition, the Forest Service at one time conducted guided tours of the area. However, prior to the accident involved in this case, Forest Service tours of the Hot Creek area had been discontinued. At the Visitors Center in Mammoth Lakes, which is about ten miles away, there was a picture display in the center of which appeared the words, "Welcome to Inyo National Forest—A land of rich contrast and valuable resources. We invite you to contemplate its beauty and to marvel at the

natural wonders of this great National Forest." At the entrance to the Inyo National Forest, there was a sign marking the boundary and welcoming the public.

30. On the main highway, a state road sign pointed the way to Hot Creek Road which parallels the south side of Hot Creek. Upstream from the Hot Creek Recreation Area is a fish hatchery and a famous fly fishing stream area known as Hot Creek Ranch.

31. Use of the Hot Creek Recreation Area in times of temperate weather has grown markedly, and it has been frequently used in winter months since skiing and snowmobiling have increased in popularity. While the Forest Rangers serviced the Hot Creek Recreation Area regularly for sanitary purposes during the summer tourist season, the site was only occasionally visited by government personnel in inclement weather. In order to protect the area, and in the interest of public safety, the Forest Service took measures, including the prohibition of overnight camping and the reduction of amenities, to discourage use of the area.

32. The Forest Service has made an effort to enhance public safety by installation of appropriate signs and warnings and by providing safe trails.

33. The facilities which existed at the Hot Creek Recreation Area at the time of the accident were constructed for the safety and convenience of the public, in the interest of sanitation and public health, and to prevent pollution and destruction of the site.

34. The Forest Service has made good faith efforts to protect the public from injury and to warn of the dangers of geothermal activity. The Forest Service's response to the changing geological circumstances has been reasonable in all respects.

35. No fee was charged for entry into the National Forest, nor was a fee charged for entry into the Hot Creek Recreation Area or for the use of its meager and rustic facilities.

36. No goods, food, equipment, or services of any kind were offered for purchase or for rent at the Hot Creek Recreation Area.

37. Plaintiff was not invited to visit the Hot Creek Recreation Area by any agent or employee of the Forest Service or other entity of the United States. Prior to the accident, Plaintiff had never been to the Visitors Center in Mammoth Lakes.

38. Recreational use of national forest land by the public is welcomed by the Forest Service, in accordance with national policy, and this includes the Hot Creek Recreation Area. In this context, members of the public are invited to make recreational use of the area. Plaintiff exceeded the scope of such invitation by leaving the established and indicated path and by entering a fenced area expressly excluded from or withdrawn from physical entry. The accident occurred within the fenced area which was clearly marked with signs warning visitors of the precise hazard which led to injury of the Plaintiff and identifying the exact cause of Plaintiff's injury, scalding water. Plaintiff was clearly not invited to be where the accident occurred but rather warned to stay away.

39. Plaintiff filed a timely administrative claim for damages resulting from injuries sustained in the accident at Hot Creek.

40. On January 16, 1976, the Forest Service denied Plaintiff's claim, stating that no federal employee was negligent.

41. On January 23, 1976, Plaintiff, who was then a resident of the City of San Valley, in the County of Los Angeles, filed a complaint in this Court under the Federal Tort Claims Act.

42. On August 16, 1982, the Court entered an order of decision which is attached hereto and made a part hereof by reference. Since issuing the order of August 16, 1982, the Court has painstakingly reviewed all of the evidence with emphasis as to how and where the accident took place. The Court now finds that contrary to the language of the order, the site of the accident is established by a preponderance of the evidence,

as indicated in these findings. The order's language in conflict with these findings is withdrawn.

43. Plaintiff did not establish by a preponderance of the evidence that Defendant is liable to him for damages resulting from the accident which is the subject of this action.

44. Any conclusion of law deemed to be a finding of fact is hereby incorporated into these finding of fact.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction herein pursuant to 28 U.S.C. § 1346(b).

2. In this case, the tort liability of the United States under the Federal Tort Claims Act, if any, is to be determined according to the law of California. *Simpson v. United States,* 652 F.2d 831 (9th Cir.1981); *Richards v. United States,* 369 U.S. 1, 6–8, 82 S.Ct. 585, 589–590, 7 L.Ed.2d 492 (1962).

■ 3. The Federal Tort Claims Act makes the United States liable for negligence in the same manner and to the same extent as a private individual would be in similar circumstances. *Phillips v. United States,* 590 F.2d 297 (9th Cir.1979).

4. California Civil Code § 846 applies to the United States as an owner of the site of the accident in question. This section provides that an owner of real property owes no duty of due care to keep the premises safe for entry or use by others for recreational purposes or to give any warning of hazardous conditions subject to exceptions specified.

■ 5. The United States did not wilfully or maliciously fail to guard against dangerous conditions.

6. The United States did not exact any consideration for permission to enter or use the Hot Creek Recreation Area. Plaintiff paid no consideration for permission to enter and use the Hot Creek Recreation Area.

7. Plaintiff was not expressly invited to enter upon or use the premises within the meaning of California Civil Code § 846.

8. Plaintiff does not come within the exceptions of California Civil Code § 846.

9. Signs posted by the United States warning of dangers within a fenced area excluded the fenced area from use by the public, whether for recreational purposes or otherwise. Entry upon this portion of the property was not a part of the property opened to public use by the government. Entry by Plaintiff upon this portion of the property exceeded the scope of the government's consent to recreational use of National Forest land by the public. In this area, Plaintiff was a trespasser.

10. The government's warning signs of existence of danger in an area and the construction of a fence surrounding that area was a good faith, appropriate, reasonable and adequate response to the dangers existing in the area. These measures constituted adequate warning of known concealed dangers which existed in the area.

11. The publicity given Hot Creek by the government and by private parties taken collectively or individually did not constitute an express invitation to Plaintiff within the meaning of California Civil Code § 846.

12. The provision of limited public facilities by the government did not constitute an express invitation within the meaning of California Civil Code § 846.

13. Plaintiff did not establish by a preponderance of the evidence that the government was liable to him for damages for personal injuries which he suffered on December 20, 1973, at Hot Creek Recreational Area.

14. Defendant is entitled to judgment against Plaintiff in accordance with these Findings of Fact and Conclusions of Law.