Jerry Paul CHIDESTER, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. CV 79–4619:TJH.

United States District Court, C.D. California.

Oct. 22, 1986.

G. Dana Hobart, Hobart & Heeringa, Los Angeles, Cal., Wylie A. Aitken, Santa Ana, Cal., for plaintiff.

Robert C. Bonner, U.S. Atty., Frederick M. Brosio, Jr., Asst. U.S. Atty., Chief Civ. Div., William B. Spivak, Jr., Asst. U.S. Atty., Los Angeles, Cal., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HATTER, District Judge.

### FINDINGS OF FACT

1. This action was brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 et seq., for serious injuries sustained on July 9, 1978, when plaintiff dove into water of the Lower San Juan Creek, which is in the Trabuco Ranger District of the Cleveland National Forest, State of California.

2. On July 9, 1978, plaintiff Jerry Chidester, then age 19, and his companions Dan Fluett, Gilbert Nieto, Gary Carr, and Charles Weist, took an outing from San Clemente, California to the Cleveland National Forest. They drove in Fluett's pickup truck with plaintiff and Nieto and a cooler of beer riding in the back of the truck. Beer was purchased at Fred's Liquors in San Clemente, and additional beer was purchased at Club Liquor after Nieto and plaintiff were picked up.

3. Plaintiff and his companions did some four-wheel drive riding after they were in the Forest. It was a hot day and more beer was purchased at a small general store in the mountains.

4. San Juan Canyon runs in a generally east-west direction. Lower San Juan Creek flows in a generally westerly direction in the bottom of the canyon.

5. Returning from the off-road driving and the little general store, the truck was parked along the right-hand side of the road facing westbound.

6. After parking, the group first crossed the road, hiking around on some rocks on the south side of the road, then returning across the road, and hiking down

over a hillside to Lower San Juan Creek. While hiking, plaintiff had one beer in his hand and one in his pocket.

7. Various members of the group took different routes from the parking place down the hillside to the creek. Plaintiff ended up downstream or to the west of the dam and pool which was his destination, and he had to trudge up stream. This gave him an opportunity to observe the creek bed.

8. Plaintiff did not gain access to the pool of water formed behind Orange County Fish Dam No. 27 by walking from a picnic ground to Dam No. 27.

9. Dam No. 27 and the pool of water it impounded are in Sec. 1, T7S, R6W S.B.B.M.

10. The premises described in the preceding paragraph were under special use permit to the County of Orange at the time of the accident.

11. The pool of water into which the plaintiff dove, when he was injured, was created by the construction of a dam by Orange County known as Dam No. 27. The dam was constructed by the Orange Fire Protection Department, whose objective was to enhance fishing potential, provide additional water for wildlife conservation, and to extend the period in which fire protection water is available in the area.

12. The forest supervisor of the Cleveland National Forest, on September 20, 1949, granted a special use permit to the Orange County Board of Supervisors for the construction of dams and pools of water on Trabuco and Holy Jim Creeks within the Trabuco Ranger District. On June 9, 1953, the permit was amended to include San Juan Creek. On September 11, 1967, an amendment was made giving permission to Orange County to increase the height of Dam No. 27 from 2 feet 10 inches to a height not to exceed 8 feet.

13. In the springtime, Orange County inserts boards in the otherwise open center section of the dam, after which the California Department of Fish and Game stocks the creek with fish. The Orange County Fire Department removes the boards at an appropriate time later in the year.

14. On July 9, 1953, when San Juan Creek in Section 1, T7S, R6W, S.B.B.M. was included by Amendment No. 1 in the special use permit to Orange County, Dam No. 27 was not in existence.

15. Defendant owned the Cleveland National Forest, and was an owner of an estate in real property within the meaning of Cal.Civ.Code § 846, at the time and place of the accident.

16. Plaintiff paid no consideration for permission to enter the Cleveland National Forest or to engage in water sports in San Juan Creek.

17. Plaintiff was not personally selected by any employee of the defendant to enter the premises.

18. Plaintiff did not stop at any ranger stations.

19. Plaintiff did not talk to any member of the U.S. Forest Service or any employee of the United States.

20. Plaintiff did not obtain or see any Forest Service literature.

21. Plaintiff did not visit Lower San Juan Picnic Ground.

22. Lower San Juan Picnic Ground contains rest rooms, eight picnic tables and fire pits, and eight stalls for parking.

23. The provision of public facilities at various camp grounds and picnic grounds in the Trabuco Ranger District, including Lower San Juan Picnic Ground, did not make plaintiff an express invitee.

24. Plaintiff was not expressly invited, rather than merely permitted, within the meaning of Cal.Civ.Code § 846.

25. Dam No. 27 and the pool of water it impounded did not constitute a resort within the meaning of California Health and Safety Code §§ 24050 to 24054.

26. Lower San Juan Picnic Ground was not a resort within the meaning of California Health and Safety Code §§ 24050 to 24054.

27. Dam No. 27, the pool of water it impounded, and the site of plaintiff's accident were not within Lower San Juan Picnic Ground.

28. Dam No. 27 was over 100 yards from the western end of Lower San Juan Picnic Ground at Table No. 8.

29. Lower San Juan Picnic ground was not visible from Dam No. 27 and vice-versa.

31. Plaintiff did not visit the Lower San Juan Picnic Ground on the date of the accident.

32. Plaintiff was injured in a diving accident and not a drowning accident.

33. Plaintiff's injury did not result from an occurence of the nature of which California Health and Safety Code §§ 24050–24054 was designed to prevent.

34. Dam No. 27 was built and maintained by the Orange County Fire Department.

35. Dam No. 27 was owned by Orange County which had the keys to the lock holding the boards in place.

36. The Orange County Fire Department built Dam No. 27 with an opening in the center for the passage of water and sediment through the dam.

37. The Orange County Fire Department installed boards in Dam No. 27 each year after the high water was past.

38. The purpose of the installation of the boards in Dam No. 27 was to pond the low water flows for fish habitat and fire fighting purposes.

39. The boards were installed in Dam No. 27 each year after the flood season was past so that the ponds would not fill with moving sediment.

40. The Orange County Fire Department maintained records of installation, maintenance, and removal of the boards.

41. The records of installation, maintenance, and removal of the boards show that in 1978 the boards were installed at Dam No. 27 in April of that year.

42. No large streamflows were recorded at the gaging station downstream from Dam No. 27 on San Juan Creek after March 12, 1978, through the time of the accident dive on July 9, 1978.

43. The records of installation, maintenance, and removal of the boards show that the boards installed by the Orange County Fire Department in Dam No. 27 in 1978, prior to the accident dive, were properly installed.

44. The natural topography and configuration of the bottom of the pool at Dam No. 27 were relatively level and even as shown by Exhibit 41.

45. Plaintiff did not test the depth of the water where he dove prior to being injured.

46. Plaintiff dove head first without knowing the depth of the water.

47. The water was unclear and plaintiff could not see the bottom.

48. Plaintiff was drinking beer all day on the day of the accident while driving up to the mountains, while off-road driving, while hiking, and while down at the stream where the accident occurred.

49. Plaintiff was admitted to the emergency department at San Clemente General Hospital at 5:35 p.m. A blood sample received at the lab at 6:23 p.m. and analyzed at 6:29 p.m. was 160 milligram/percent or .160 alcohol. Nurses' notes indicate the presence of liquor on breath at 9:30 p.m.

50. Plaintiff was intoxicated at the time of the accident and such intoxication was a substantial cause of the accident.

51. Plaintiff was warned by his companion Carr, who entered the water prior to plaintiff, with the approximate words, "Hey man, be careful because it is shallow!"

52. Plaintiff ignored the warning and dove head first.

53. Plaintiff's companion, Fluett, dove before plaintiff and did a shallow or competition type dive. Carr, who went before plaintiff, jumped in feet first with his legs doubled up.

54. Fluett, who had swum over to the dam, was sitting on it, and observed the

accident dive, testified that plaintiff entered the water at a 45 degree angle.

55. Plaintiff's steep head first dive into water of unknown depth while in an intoxicated condition and in disregard of a warning from a companion were the proximate cause of the accident.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction pursuant to 28 U.S.C. § 1346(b).

2. In this case, tort liability, if any, is to be determined according to the law of California. *Richards v. United States*, 361 U.S. 1, 6–8, 82 S.Ct. 585, 589–590, 7 L.Ed.2d 492 (1962).

3. The Federal Tort Claims Act makes the United States liable for negligence in the same manner and to the same extent as a private individual under similar circumstances. *Phillips v. United States*, 590 F.2d 297 (9th Cir.1979); *Simpson v. United States*, 652 F.2d 831 (9th Cir.1981).

4. California Civil Code § 846 applies to the United States as an owner of the land in question. This section provides that an owner of real property owes no duty of care to keep the premises safe for entry or use by others for specified recreational purposes, including water sports, or to give any warning of hazardous conditions subject to exceptions specified.

5. The United States did not willfully or maliciously fail to guard or to warn against a dangerous condition, use, structure, or activity.

6. Plaintiff paid no consideration for permission to enter the Cleveland National Forest or to use Lower San Juan Creek.

7. Plaintiff was not expressly invited, rather than merely permitted, to come upon the premises within the meaning of Cal.Civ. Code § 846(c) and was permitted to enter in a *pro forma* way, which accords with national policy to open the national forests to recreational use. This was a generalized invitation, at best, which consists of nothing more than courteously fulfilling the purpose of Cal.Civ.Code § 846, which artic-ulates the State's policy of encouraging owners of private property to permit public recreational use by limiting the landowner's liability to such persons when and where public recreational use is not prohibited by the landowner. The State's policy coincides with federal policy to encourage such recreational use in the public interest. See, *Thompson v. United States*, 592 F.2d 1104 (9th Cir.1979); and *Phillips v. United States*, 590 F.2d 297 (9th Cir.1979).

8. Forest Service literature, which plaintiff did not see, does not render plaintiff expressly invited rather than merely permitted. The California Legislature intended the term "expressly invited" to include only those persons who were personally selected by the landowner. *Phillips v. United States*, 590 F.2d 297, 299 (9th Cir. 1979).

9. Plaintiff was not expressly invited rather than merely permitted by virtue of signs. There were no signs at Dam 27 and plaintiff could not have relied upon any signs at Lower San Juan Picnic Ground which he did not see. Even if he had seen such signs, they would not constitute an express invitation. See, *Simpson v. United States*, 564 F.Supp. 945 (C.D.Cal.1982). (No express invitation, although one sign carried the words, "We invite you").

10. A letter to the editor of the Los Angeles Times, from the Director of the National Park Service in the July 10, 1985, which plaintiff introduced at trial, does not render plaintiff "expressly invited rather than merely permitted." The mission of the Forest Service differs from that of the Park Service. The acts of Congress originally establishing the Forest Service had only two purposes, to conserve waterflows and to furnish a continuous supply of timber. In 1960, recreation became a supplemental purpose. See, *United States v. New Mexico*, 438 U.S. 696, 98 S.Ct. 3012, 57 L.Ed.2d 1052 (1978).

Forest Service literature, signs, publicity of any other type, if any, and the provision of public facilities, either singly or in combination, do not render plaintiff expressly invited rather than merely permitted to en-

ter defendant's premises on the date of the accident within the meaning of Cal.Civ. Code § 846(c).

11. Even if plaintiff had been expressly invited, the United States owes no duty to plaintiff because of the rules governing the liability of a lessor. *Thompson v. United States*, 592 F.2d 1104 (9th Cir. 1979). (No liability, although consideration was found under Cal.Civ.Code 846.) With certain exceptions, none of which apply here, a lessor of land is not subject to liability to his lessee or others coming on to the land with the consent of the lessee for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession. Restatement of Torts 2d § 355. This rule is the law in California and applies to the government in an action under the Federal Tort Claims Act where the government has issued a permit for the use of its land. *Thompson v. United States, supra.*

12. Restatement of Torts 2d § 355 applies to the present case because the land where the accident occurred was under special use permit to Orange County. The allegedly dangerous condition was not in existence on June 9, 1953, when the special use permit to Orange County was amended to include San Juan Creek. Dam 27 and the pool of water it impounded did not come into existence until after Amendment No. 1 was executed on June 9, 1953.

13. Orange County fish Dam No. 27 and the pool of water it impounds were not a resort within the meaning of Cal. Health and Safety Code §§ 24050–24054.

14. The Defendant's facility known as Lower San Juan Picnic Ground was not maintained for the purpose of public bathing or swimming and was not the type of facility the California Legislature intended to regulate by stats. 1911 Ch. 375.

15. Lower San Juan Picnic ground is not a resort within the meaning of Health and Safety Code §§ 24050–24054.

16. Plaintiff did not establish by a preponderance of the evidence that the government was liable to him for damages for personal injuries which he suffered on July 9, 1978, at Lower San Juan Creek.

17. Any Finding of Fact that is a Conclusion of Law is deemed incorporated in these Conclusions of Law and any Conclusion of Law that is a Finding of Fact is deemed incorporated in the Findings of Fact.

## JUDGMENT

This action came on for trial before the Court, Honorable Terry J. Hatter, Jr., United States District Judge, presiding; and the issues having been duly tried and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED:

That the plaintiff take nothing, that the action be dismissed on the merits, and that the defendant recover of the plaintiff its costs of action.